ANDREWS and others *against* ANDREWS :

#### IN ERROR.

Any provision, which a person competent to contract, agrees, before marriage, to accept in lieu of dower, will amount to a good equitable jointure.

*Litchfield,*
June, 1830.

Andrews
*v.*
Andrews.

Therefore, where a man and woman, of advanced age, and each the owner of a large estate, real and personal, mutually agreed, in contemplation of intermarriage, that the intended wife, should hold and enjoy all her property to her sole and separate use, and should be entitled, on certain terms, to the avails of her personal labour during the coverture, which should be in full satisfaction of her right of dower in his real estate; the marriage took place, and the agreement on the part of the husband, was executed, in good faith, by him and his representatives; on a bill in chancery, brought by his heirs and devisees against her, for a release of her dower, which was stated and found to be of the value of 500 dollars, it was held, that such agreement was founded upon a sufficient and adequate consideration; that it was opposed to no rule of law or principle of sound policy, but was, on the contrary, highly beneficial, and therefore, though not a legal jointure, it was eminently entitled to the aid of a court of chancery to carry it into effect; and the relief sought was accordingly decreed.

THIS was a bill in chancery, brought by the heirs and devisees of *Daniel Andrews,* deceased, against his widow, *Jemima Andrews,* for a release or an extinguishment of her right of dower in the estate of her late husband.

On the 2nd of *December,* 1823, *Daniel Andrews,* then seventy-four years of age, entered into a contract of marriage with *Jemima Copps,* the present defendant, who was then seventy-three years of age. Each of the contracting parties, at that time, owned and possessed a large estate, real and personal; and being desirous of securing the property of each party to the separate use of each, it was mutually agreed between them, in consideration of their contemplated intermarriage, that she should hold and enjoy all her property to her sole and separate use, so that he should not acquire or have any right to it, by virtue of the marriage; and that he should, during his life, support her, and find her with necessary clothing, and also give her the privilege of making cloth, on shares, he finding the materials and paying for the carding and weaving; and that the rights so relinquished by him and the privileges so granted to her, should be in full satisfaction of her right of dower in his real estate; and that upon his death, she should return to her own house and her former home in another town, making no claim upon his estate, real or personal, by virtue of the marriage. Having agreed to this arrangement, they applied to a scrivener to draw a proper instrument to carry it into effect. He prepared and presented the following writing: " An agreement between Mr. *Daniel Andrews,* of *Winchester,* and Mrs. *Jemima Copps,* of *Colebrook.* Mr. *Andrews* agrees to take and support Mrs. *Je-*

*mima Copps,* during his life-time, and find her with necessary
clothing.   At his decease, she is to return to her own house.
She is not to take any more property to the said Mr. *Andrews*
than she pleases ; and she is not to bring any of Mr. *Andrews'*
property away, at his decease.   Mr. *Andrews* agrees to let
Mrs. *Copps* make what cloth she pleases.   He agrees to do
the carding and weaving ; and she is to have one half she makes
to dispose of as she pleases."   This instrument was executed,
by the parties, under a full belief, that it was adapted to carry
their arrangement into effect ; and, soon afterwards, the inter-
marriage took place.   They lived together until the 20th of
*July* 1828 ; when he died, leaving a large real estate in *Win-
chester.*   During the intermarriage, he performed the stipula-
tions in the agreement on his part, in good faith ; permitting her,
especially, to hold and enjoy her property to her sole and sepa-
rate use.   After his decease, his executor delivered to her sev-
eral articles of personal property, which she had brought to the
residence of her husband, during the intermarriage, and gener-
ally, all the property which belonged to her, according to the
agreement ; and she then declared her intention to carry such
agreement into effect, on her part, and promised that she would
execute a suitable instrument for that purpose.   The following
writing, prepared by an attorney, was accordingly executed by
her : " Whereas I have received of *Daniel Andrews,* deceased,
my late husband, all those things, that he promised me in wri-
ting, at his marriage with me ; and whereas the heirs of said
*Daniel Andrews* have delivered to me the things I carried to
said *Andrews' :* Now, therefore, I do hereby discharge said
estate from any further claim, by way of dower, or in any other
way ; having received in full of all demands from the heirs and
executors of said estate.   *Winchester, July* 30th, 1828."   This
instrument was executed by the defendant, and accepted by
the plaintiffs, under an impression that it was sufficient to extin-
guish the defendant's interest in the estate ; and it was through
casualty and mistake, that it failed to accomplish this object.   On
the 26th of *November,* 1828, the defendant, in violation of her
agreement, applied to the court of probate to have dower assigned
her ; which, in consequence of the insufficiency of the last-men-
tioned instrument, was ordered.   From this order, the present
plaintiffs took an appeal ; which is now pending in the superior
court.   The value of the dower in question was more than 335
dollars, *viz.* 500 dollars.

*Litchfield,*
June, 1830.

Andrews
*v.*
Andrews.

On a hearing before the superior court, held by *Peters,* J., at *Litchfield, February term,* 1830, the facts above stated were found; and thereupon the bill was dismissed. On a motion in error, by the plaintiffs, the case was brought before this Court for revision.

*J. W. Huntington* and *T. Smith,* for the plaintiffs, contended, That they were entitled to the relief sought. The agreement in fact, made by *Daniel Andrews* and *Jemima Copps,* in contemplation of marriage, mutually relinquishing rights, which each would acquire in the property of the other, was not only a discreet and proper arrangement, but was also legally unexceptionable, and ought to be carried into effect according to the intention of the parties. Both of them were competent to contract, being *sui juris,* and labouring under no disability; and the agreement is supported by an adequate consideration. There is, indeed, a two-fold consideration; first, marriage, which is a valuable and highly meritorious consideration; (*Bradish* v. *Gibbs* & al. 3 *Johns. Chan. Rep.* 523. 549. 550.) and secondly, a mutual surrender of rights that would or might accrue to each in consequence of the marriage. The agreement was also lawful, being repugnant to no provision of statute or rule of the common law. Such an agreement, if duly executed, a court of law will enforce; and if, by mistake, it does not express the true agreement, a court of equity will rectify it, and carry into effect the intentions of the parties. 1 *Madd. Chan.* 464 to 470. *Read* v. *Snell,* 2 *Atk.* 642. *Glover* v. *Bates,* 1 *Atk.* 439. *Hodsden* v. *Lloyd,* 1 *Bro. Ch. Rep.* 534. *Blunden* & ux. v. *Barker* & al. 1 *P. Wms.* 634. *Rippon* v. *Dawding,* *Amb.* 565. *Bradish* v. *Gibbs* & al. 3 *Johns. Chan. Rep.* 523. *Peacock* v. *Monk,* 2 *Ves.* 190.

The interposition of a court of equity, in this case, is necessary; because, first, the written agreement is artificial and irregular. Secondly, it does not express the true agreement, either as to the consideration or the stipulations. Thirdly, the writing is not drawn and executed in such *form* that the rights of the parties can be enforced at law. *Rippon* v. *Dawding, Hodsden* v. *Lloyd, Bradish* v. *Gibbs,* before cited.

The agreement made with the present plaintiffs, after the death of the husband, is equally obligatory in equity and good conscience; for here too, the parties were competent to contract; and there was a sufficient consideration to support the agreement, *viz.* a moral obligation within the rule in *Cook* v.

*Bradley,* 7 *Conn. Rep.* 57.—an equitable obligation—the performance of the original agreement, by the other party—and the delivery of the property not comprised in the agreement, and to which the defendant had no claim. There was here, also, a palpable *mistake* of the scrivener ; as in order to carry into effect the intentions of the parties, he should have drawn a quit-claim deed, to be executed by the widow so as to convey an interest in real estate. The scrivener having made a mistake, in this particular, it is competent to a court of equity to grant relief. *Hunt* v. *Rousmaniere's* admr. 1 *Pet. Rep.* 1. *Rippon* v. *Dawding, Blunden* & ux. v. *Barker* & al. before cited.

The principal objection to the relief sought, will probably be, that by positive provision of statute, the widow is entitled to dower, " unless a suitable provision was made for her support, before the marriage, by way of jointure ;" (*Stat.* 180. *tit.* 26. *s.* 1.) and that, in this case, no such provision was made. The object of the statute was to introduce a regulation or qualification unknown to the common law ; for at common law, not only the right to dower, but also the right to a distributive share of the personalty, may be barred, by composition, or a contract before marriage, upon adequate consideration. See the authorities above cited. The agreement, so far as dower is concerned, did not even respect an interest in land or real estate ; for the husband might not die seised of any land ; and it was in his power to defeat the right of dower, as was done in the case of *Stewart* v. *Stewart,* 5 *Conn. Rep.* 317. It was, therefore, a mere possibility. But even if an interest in dower had vested, upon the marriage, the agreement might be rectified, notwithstanding the statute of frauds and perjuries. *Washburn* v. *Merrills,* 1 *Day* 139. *Abbe* v. *Goodwin,* 7 *Conn. Rep.* 377.

*Benedict* and *Miller,* for the defendant, insisted, That she ought not to be deprived of her dower. From the agreement stated in the bill, and the facts found, it does not appear, that she was to receive, or has received, any thing by way of jointure, which ought, either in law or equity, to take her dower from her. A woman is, by marriage, a purchaser of dower out of her husband's estate, and cannot be deprived of it, by any agreement made before or after marriage, which does not secure to her " a suitable provision for her support" out of his estate, after his death. Jointure and settlement are *ex provisione*

*Litchfield,*
June, 1830.

Andrews
*v.*
Andrews.

*Litchfield,* *hominis,* and not *ex contractu.*    *Stat.* 180, 1, 2. *tit.* 26. *s.* 1. 5.
June, 1830.   *Glover* v. *Bates,* 1 *Atk.* 439.    1 *Madd. Chan.* 355.    *Reeve's*

Andrews   *Dom. Rel.* 41, 2. & seq.    Dower vests immediately on the
*v.*   death of the husband.    *Stedman* & al. v. *Fortune,* 5 *Conn.*
Andrews.   *Rep.* 462.

In this case, the wife stipulates to receive nothing out of the husband's estate.    He agrees not to interfere with her property, during coverture; but in doing this, he parts with nothing to her, by way of support after his death.    He also agrees to maintain and support her, during coverture; but this he would be obliged to do, without any agreement.    A contrary agreement would be void.

The agreement made after the husband's death, is clearly such an one as a court of equity will not enforce, not being founded on any adequate consideration.    The estate in dower is stated and found to be worth 500 dollars.    The consideration claimed is the re-delivery of some articles of trifling value, (not over 6 or 7 dollars) which she carried to her husband's, on her marriage.    But this small amount does not appear to have been paid to her by way of purchase of her dower, but merely as a gift to her.    A court of equity, surely, will not compel her to release her dower, on account of her having received those articles.    If the ante-nuptial agreement was void, the other cannot be enforced.

BISSELL, J.  It is readily conceded, that the agreement entered into between the parties, before the marriage, and anciliary thereto, does not constitute a *legal* bar of dower.    The provision made for the wife, has none of the requisites of a *legal jointure.*    Is it a bar, in equity; and will a court of chancery lend its aid to carry the agreement into effect?  The only objection, which has been urged, and on which the court below dismissed the bill, is the inadequacy of the provision for the support of the intended wife.    That the agreement was not founded upon a sufficient consideration, cannot be contended. Marriage itself is a valuable consideration.    Besides, the husband relinquished all the rights, which, by the marriage, he might have acquired over the estate of the wife.    This furnishes a decisive answer to the alleged want of consideration, and would to be equally conclusive upon the objection of inadequacy.

The case finds, that the intended wife was possessed of a

large real and personal estate. The husband would have been *Litchfield,* entitled to the use of the former, during the joint lives of himself and his wife, and would have acquired an absolute title to the latter, by virtue of the marriage. How, then, can it be said, that this agreement was not beneficial to the wife? It is obvious, that the question whether a provision for the wife, be, or be not adequate, must depend upon a variety of considerations, and of which, the parties are, generally, the best judges. I can see no reason why such an agreement, deliberately made, and upon sufficient consideration, should not be enforced in chancery. Such contracts, especially in late marriages, are not unusual. They are opposed to no rule of law, nor to any principle of sound policy. On the contrary, they are, in my judgment, highly beneficial, and are eminently entitled to the aid of a court of chancery, where such aid is necessary to carry them into effect; and especially is this true, where the contract has been executed, in good faith, by one of the parties. Such was the fact here. The contract was executed, on the part of the husband and his representatives. And the case finds, that it was entirely owing to the mistake of the scrivener, who drew the release, that the agreement was not carried into full effect, and the dower of the widow barred, at law. The relief sought for, by the plaintiffs, is, therefore, founded in the highest equity; and the claim to such relief is fully supported by authority. There is, perhaps, no principle better settled, than that any provision, which an adult, before marriage, agrees to accept in lieu of dower, will amount to a good equitable jointure. 1 *Madd. Chan.* 369. *Sug. Law of Vend.* 258. *Jordan* v. *Savage, Bac. Abr. tit.* Jointure. B. *Charles* v. *Andrews,* 9 *Mod.* 152. *Williams* v. *Chitty,* 3 *Ves. jun.* 545. Earl of *Buckingham* & al. v. *Drury,* 3 *Bro. Parl. Ca.* 492. (*Toml.* ed.) S. C. by the name of *Drury* v. *Drury,* cited *Harg. Notes to Co. Litt.* 36. *b.* n. 228. *Vizard* v. *Longdale,* cited in *Walker* v. *Walker,* 1 *Ves.* 55.

The case of *Selleck* v. *Selleck* & al. (*a*) decided, by this

Andrews
*v.*
Andrews.

June, 1830.

---

(*a*) The case of *Selleck* v. *Selleck* & al. was this. *James Selleck,* at an advanced age, married a second wife. Previous to the marriage, and in contemplation thereof, an agreement, in writing, was entered into between the parties; by which it was stipulated, that should the marriage take effect, and the wife survive her husband, his executors should pay to her, within four weeks after his decease, the sum of 100 dollars, in full of all claims, which she might have on his estate, in virtue of the

Litchfield, Court, in June 1812, and not reported, bears a strong resem-
June, 1830. blance to this case, in all its leading features, and is, indeed, de-

Andrews   cisive of it.
  v.
Andrews.       I am of opinion, that the judgment of the superior court
ought to be reversed.


The other Judges were of the same opinion; PETERS, J. concurring solely on the authority of Selleck v. Selleck & al.

Judgment reversed.

marriage.   This sum, the intended wife, on her part, agreed to receive in lieu of dower, and in full satisfaction and discharge of all claims, which she, by virtue of the marriage, might have upon the estate of her intended husband.   The marriage took effect: and in 1808, James Selleck died, leaving his widow surviving.   At the time of his death, he owned a real estate, of the value of about 6,000 dollars.   The sum mentioned in the agreement, was paid to, and received by the widow, within the time stipulated: And she, thereupon, executed and gave to the executors a receipt, acknowledging that she had received that sum in full satisfaction of dower in the estate of her late husband, and of all claims and demands, which she had, or might have, on said estate.   This instrument was not under seal.   She, afterwards, applied to the court of probate, for the district of Norwalk, to have dower allotted and set out to her, in the estate of her deceased husband.   This application was sustained; and dower was set out to her accordingly.

On an appeal taken, this decree of the court of probate was affirmed, by the superior court, on the ground that the provision made for the wife, by the agreement, did not constitute a legal jointure, and was not, therefore, at law, a bar of dower; and that her dower having vested, could be released only by deed.

The heirs at law of James Selleck then preferred their bill in chancery, stating all the facts aforesaid, and praying for relief.   The superior court found the facts stated to be true, granted the prayer of the bill, and decreed the title to dower, in the heirs at law.   To reverse this decree, a writ of error was brought in the Supreme Court of Errors, and tried at the June term 1812; and by the court, unanimously, the decree of the superior court was affirmed.

Daggett and N. Smith, for the plaintiff in error.   Sherman and Bissell, for the defendants in error.