DtntEEE, C. J.
 

 The defence to this suit is that the antenuptial contract set forth in the bill as the ground of relief is void.
 

 1. Because it was obtained by duress.
 

 2. Because it was without any adequate consideration and was grossly inequitable.
 

 3. Because the parties to it had before its execution become husband and wife by a common law marriage.
 

 We do not think the defence is made out on either of these grounds.
 

 1. It is true the defendant executed the contract under a- kind of pressure, but it was a pressure of the circumstances in which she found herself rather than any duress exerted by the other party. This is apparent from the fact, proved by several uncon-•tradicted witnesses, that immediately after the contract was executed, and her marriage with the other party solemnized, she stated the terms of the contract, and referred to it as proof that she had married for love and not money, claiming credit for her disinterestedness, and also from the fact that she afterwards repeatedly referred to it in the same manner, and never until some time after the death of her husband set up the claim that the contract was invalid. »
 

 2. When the contract was executed, the defendant had a little personal estate, and was expecting to inherit from her father at his death, subject to her mother’s dower, the half of an estate in land worth four thousand dollars. Her intended husband had about twenty-five thousand dollars in personal estate, but no real estate except a piece of woodland worth less than one thousand dollars. Now when we consider that the marriage would give her no right in her husband’s personalty of which he could not
 
 *492
 
 deprive her, and that be might possibly become entitled to cur-tesy in the estate which she was expecting to inherit, we think it cannot be said that the contract was without any adequate consideration, or that it was grossly inequitable or unjust.
 

 3. The evidence shows that for more than a year before the marriage was celebrated the parties to it were engaged by mutual promises of marriage, and that during this time she was with child by the other party, which she lost by a miscarriage voluntarily induced by both of them. The husband, however, did not openly cohabit with hex’, nor did he ever take her to his house to live with him until after the nuptial ceremony was performed, though, being a widower, he had a home of his own, nor did he acknowledge her as his wife until after that; but, on the contrary, when approached by her friends he declared that he intended to marry her, but should take his own time for it, and could not be driven into it.
 

 The defendant contends that the proof of these facts is proof of all that is necessary to constitute the common law marriage knowix as a marriage
 
 per verla de futuro cum copula.
 
 She also contends that in this State the common law in regard to marriage has not been abrogated ixor superseded by the statute.
 

 Our statute empowers certains functionaries to join persons in marriage, but it does not expressly forbid marriage without their intervention, nor declare that marriage without their intervention is void. It is because the statute contains no such prohibitory language that the defendant contends that a common law marriage is good. She is supported in this view by high authority.
 
 Hutchins
 
 v. Kimmell, 31 Mich. 127, 130, and cases cited;
 
 Dyer
 
 v.
 
 Brannock
 
 66 Mo. 391, and cases there cited. But whether our statute is to be similarly construed, we do not find it necessary to decide, inasmuch as we are of opinion that a mere executory agreement to marry does not become consummated by copulation unless the parties so intend. It is indispensable to marriage, whether under the statute or at common law, that the parties consent to be husband and wife presently, and though cohabitation following an engagement is evidence of such consent, it is not conclusive, but only
 
 primá facie
 
 evidence of it, and as such open to rebuttal by counter proof. 1 Bishop on Marriage and Divorce, §§ 253, 254;
 
 Forbes
 
 v.
 
 Countess of
 
 Strathmore, Ferg.
 
 *493
 
 113 ;
 
 The Queen
 
 v.
 
 Millis,
 
 10 Cl. & Fin. 534, 782 ;
 
 Robertson
 
 v.
 
 The State,
 
 42 Ala. 509;
 
 Port
 
 v.
 
 Port,
 
 70 Ill. 484. See also
 
 Cheney
 
 v.
 
 Arnold,
 
 15 N. Y. 345;
 
 Duncan
 
 v.
 
 Duncan,
 
 10 Obio St. 181, and Mr. Bishop’s criticisms, on them Bishop on Marriage and Divorce, §§ 255-258. In the case at bar, we think the evidence shows that the parties after their engagement were all along looking forward to a formal ceremony to make them husband and wife, and never agreed or consented to become such without it.
 

 Oscar Lapham §• Charles PL. Page,
 
 for complainant.
 

 James Tillinghast,
 
 for respondent.
 

 The right to have the contract enforced in equity, if it is obligatory, is not disputed. See
 
 Tarbell
 
 v.
 
 Tarbell,
 
 10 Allen, 278 ;
 
 Miller
 
 v.
 
 Goodwin,
 
 8 Gray, 542;
 
 Andrews
 
 v.
 
 Andrews,
 
 8 Conn. 79 ; 1 Bishop Law of Married Women, §§ 422, 423.
 

 Let a decree be entered restraining the defendant from claiming or prosecuting any claim for any share or allowance in or out of the personal estate of her late husband. We confine the decree to the personal estate, for, the personal estate being sufficient to pay the debts, the complainant, who brings the suit as administrator, has no concern as such with the realty.
 

 Decree accordingly.